Barron et al. *v.* Fay.

Asa T. & Oscar F. Barron *v.* Edwin Fay, *Appellant.*

*Agency.   Practice.*

The defendant's requests in this case to the court to charge the jury having been made upon a false assumption as to what the evidence tended to prove, it is *held* that the court properly refused to charge agreeably to the requests.

Trover for a hog.   Plea, not guilty.   Trial by jury, May Term, 1865, Barrett, J. presiding.

The evidence on the part of the plaintiffs tended to show, that Flanders was occupying and carrying on a farm of the defendants, as tenant under a lease, for the term of one year from the first day of April, 1862 ; that in the January following, all his property was attached by the defendant ; that soon thereafter the plaintiffs made an attachment of the same property subject to the attachment of the defendant,—said hog being omitted from said attachments as being exempt under the statute ; that the plaintiffs obtained a judgment by confession on their debt against Flanders, and the defendant's attachment having been abandoned, the plaintiffs had the property thus attached sold on their execution, the avails of which left more than $100. unpaid ; that about the middle of March, 1863, Flanders sold said hog to the plaintiffs for $16. to be paid for by applying that amount in payment for so much upon said judgment and execution, and that the same was then so applied and endorsed on said execution ; that on the 17th of March, 1663, Mr. Eastman, by an arrangement with Flanders, moved on to said place to occupy under Flanders, and in his right, until the expiration of Flanders' term under his lease ; that Eastman in January, 1863, bargained with Fay to lease and become tenant of the same premises from the expiration of the term of Flanders ; that on the sale of said property on execution, and of said hog, it was agreed between the plaintiffs and Flanders, that Flanders should keep the stock thus sold and said hog on the premises, and feed and take care of them up to the expiration of his term ; that Flanders moved from the premises to another town on the day that Eastman moved on, having agreed with Eastman to take care of said stock and hog on the place, and do the chores for him up to the expiration of Flanders' term ; that the plaintiffs at the time of the sale of said property on execution, purchased of Flanders his interest in

the premises under said lease, and took an assignment thereof, and assented to this arrangement with Eastman ; that Eastman knew this hog had been sold to the plaintiffs ; that on the morning of the 1st day of April, about 9 o'clock, the plaintiffs arranged with Eastman, and he agreed that he would keep said hog for them until they should find it convenient to take it away ; that he did so to keep it, until some time in June, 1863, when the defendant took away said hog, and sold and delivered it to Hoisington, and received the pay therefor, and Hoisington kept and disposed of it to his own use.

It appeared from the evidence on both sides, that at the time Flanders went into possession under his lease, April 1st, 1862, there was a barrow pig on the place, which the defendant let Flanders have upon an agreement, and as a transaction outside and independent of the lease ; Flanders testified that the agreement was, that he was to have the barrow pig, and was either to pay the money for it, or when he left at the end of his term, he was to leave a pig as good as the one he had of the defendant. Fay testified that for said barrow pig, Flanders at the end of the year was to leave him a sow with pig, and if it was any better than said barrow pig, said defendant was to pay Flanders half the difference of their value. He further testified that he told Flanders he wanted he should get the sow pig that he was to have of Mr. Kenny, and spoke to Kenny about it ; that afterwards Flanders bought two pigs of Mr. Kenny,—a sow, the one in controversy, and another for his own use ; that he ( the defendant,) was on the place occupied by Flanders in June, 1862, when Flanders asked him to go and see the pig he had bought for him and " see how I liked it. I did so, and told him I liked it first rate. He told me which he bought for me,—the sow,—and pointed it out to me. I was up once between this time and the next January, and then he wanted me to see my pig."

Flanders, on cross-examination by the defendant, testified that he bought two pigs of Kenny while on the place,—one of them the one in controversy, the other a barrow ; bought both for himself,—not the sow to leave for the defendant, and denied telling the defendant that he had bought the sow pig for him. It was not controverted that Flanders bought and paid for the two pigs.

Evidence coming from the defendant, and witnesses introduced by

Barron et al. *v*. Fay.

him, tended to show, that the stock and other property embraced in the lease of the defendant to Flanders, was to be, and was appraised to Flanders, on the 1st day of April, 1862, by Cyrus Hoisington, and was to be appraised back to the defendant by the same person on the expiration of the term, that the defendant called upon said Hoisington to make said appraisal, and he did make it, on the 2d day of April, 1863 ; that under the lease from Fay to Eastman, the same property was to be taken by Eastman under an appraisal to be made by said Hoisington and Mr. Humphrey ; and they did on the said 2d day of April, appraise the same from said Fay to Eastman, and by Fay's direction included said hog in said appraisal. It appeared that said Flanders took no part in anything that was done as to any of said property after he moved from the place, March 17th, as before stated. The defendant in the course of his testimony said : " In January, 1863, 1 agreed with Eastman *to go in as my tenant.* He was to have what stock belonged to me on the farm, and the hog. He was to have possession the 1st of April. His going on before that was an arrangement between him and Flanders."

The evidence on both sides tended to show that both plaintiffs and defendant were at the said place on the 1st day of April, and both asserted to the other his claim to the pig.

The evidence on the part of the plaintiffs tended to show, that they had no knowledge of any claim, right or interest of the defendant in said sow at the time they bought her of Flanders, and there was no evidence on the part of the defendant tending to show the contrary.

It appeared that the defendant claimed to own the sow while in the possession of both Flanders and Eastman.

The defendant's counsel made several requests to the court to charge the jury, and to the refusal of the court to charge as requested in the first and third requests, the defendant excepted. These requests are stated in the opinion.

*Converse & French,* for the defendant.

*William Collamer* and *S. E. Pingree,* for the plaintiffs.

The opinion of the court was delivered by

KELLOGG, J. On the trial of this case in the county court, the defendant made several requests to the court in respect to the charge to the jury, and the refusal of the court to charge the jury in accord-

ance with the first and third of these requests is the ground of exception now insisted on. The first request was that the jury should be instructed that, if they found the contract about the sow to be as claimed by the defendant, and that Flanders, the defendant's tenant, purchased the sow as the defendant's, and for him, and so notified the defendant soon after the purchase, and, in January thereafter, delivered the sow to the defendant as his property under the circumstances detailed in the testimony, the sow became and was the property of the defendant, and that Flanders could make no sale of her to the plaintiffs which would defeat the defendant's right to her. This request was made on the assumed ground that the evidence tended to show that when Flanders purchased the pig of Kenny, he was acting as the agent of the defendant, and in his behalf ; but we think that the defendant's evidence as stated in the bill of exceptions had no tendency to show this. The evidence only shows that the defendant expressed to Flanders a wish or preference that he should procure the sow pig, which Flanders was to deliver him, of Kenny, and that he, the defendant, had spoken to Kenny about the matter ; but it had no tendency to show that the defendant selected or indicated any particular pig of Kenny's which he wished Flanders to purchase. The utmost which the evidence could be considered as tending to show was that Flanders bought the pig of Kenny, intending to let the defendant have it in fulfillment of his contract. There was no obligation on the defendant, at the time when this pig was purchased of Kenny, to receive it from Flanders ; and, by the contract, he had no claim on Flanders for the delivery of the pig which he was to receive from him until the end of the year. If the pig had died after Flanders had purchased it, and before it had been accepted by the defendant, the loss would have been the loss of Flanders, and the liability of Flanders for the price of the barrow pig would have been the same after as before the purchase from Kenny. The intention of Flanders, at the time of making the purchase, to let the defendant have the pig in satisfaction of his contract with the defendant, did not invest the defendant with any property in the pig at that time, nor make Flanders the agent of the defendant in making the purchase. We think that the defendant's evidence did not tend to show that Flanders, in making the purchase of Kenny, acted as

Barron et al. *v*. Fay.

the agent or in behalf of the defendant; and, if the evidence did not tend to show this, there was no error in the refusal to charge the jury agreeably to the defendant's first request.

The third of the defendant's requests was to this effect,—that the jury should be charged that if the plaintiffs knew, at the time when they purchased the sow, that she was the property of the defendant, they were not entitled to recover. The bill of exceptions states that the evidence on the part of the plaintiffs tended to show that they had no knowledge of any claim, right or interest of the defendant in the sow, at the time they bought her of Flanders, and that there was no evidence on the part of the defendant tending to show the contrary. Under this statement, it is clear that there was no evidence in the case upon which this request could be predicated or supported, and that this ground of exception has no foundation to rest upon. A compliance with the request would have allowed the jury to find a material fact upon mere conjecture, without evidence; and the request was very properly refused.

Judgment of county court for the plaintiffs affirmed.